**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION**

| | |
|---|---|
| Joseph Mayernik, | ) |
|     Plaintiff, | ) Case No.: 1:20-cv-00132 |
| v. | ) |
| CertainTeed LLC, | ) Judge Michael R. Barrett |
|     Defendant. | ) |

## OPINION AND ORDER

This matter is before the Court on Defendant CertainTeed LLC's partial Motion to Dismiss. (Doc. 8). Plaintiff Joseph Mayernik filed a Response in Opposition (Doc. 12) and Defendant filed a Reply (Doc. 14).

**I. BACKGROUND**

Plaintiff is a homeowner who built his dream home in Cincinnati, Ohio in 2013. (Doc. 1 ¶ 9). Defendant is a manufacturer, supplier, and seller of roofing materials. (*Id.* ¶ 10). After research into various types of roof shingles and substantial due diligence, Plaintiff purchased roof shingles for his dream home from Defendant. (*Id.* ¶1). Specifically, on July 31, 2013, Plaintiff purchased Defendant's composite, lightweight Symphony Slate Shingles ("Shingles") that came with a 50-year warranty. (*Id.* ¶¶ 1, 14, 19). Notably, after Plaintiff selected Defendant's Shingles, he modified the architectural structure of his home's roof to hold less weight, as the Shingles were a composite material that weighed less than standard slate shingles. (*Id.* ¶ 18).

The Shingles' warranty includes the following language:[1]

**What and Who is Covered and for How Long**
CertainTeed warrants to the original owner/consumer that, when subject to normal and proper use, Symphony shingles will be free from manufacturing defects that cause leaks for fifty (50) years from the date of original installation and that CertainTeed will pay to repair or replace, at its option, any shingles CertainTeed determines to be defective under the terms of this Limited Warranty.

In the event of repair or replacement pursuant to the terms of this Limited Warranty, the original warranty applicable at the time of original installation shall apply to the replacement shingles or the repaired shingles.

. . .

**SureStart™ Protection**
All of CertainTeed's shingle products are covered by SureStart protection. Under this warranty feature, CertainTeed, at no charge, will pay to repair or replace, at its option, any shingles CertainTeed determines to be defective and that cause leaks during the applicable SureStart period. For Symphony shingles, the SureStart period begins when the original shingle installation has been completed and terminates at the competition of its seventh (7th) year of service following original installation. CertainTeed's maximum liability under SureStart is equal to the reasonable material and labor cost to replace or repair the defective shingles that cause leaks, as determined by CertainTeed. Roof tear-off, metal work, flashing and disposal expenses, and other costs or expenses incurred during such repair or replacement are not covered or reimbursed by this Limited Warranty.

. . .

**LIMITED WARRANTY**
**AND LIMITATIONS OF REMEDIES**
THE OBLIGATIONS CONTAINED IN THIS LIMITED WARRANTY CONSTITUTE THE EXCLUSIVE REMEDY AND ARE EXPRESSLY IN LIEU OF ANY AND ALL OTHER OBLIGATIONS, GUARANTEES AND WARRANTIES. APPLICABLE STATE LAW WILL DETERMINE THE PERIOD OF TIME FOLLOWING THE SALE THAT A PROPERTY OWNER/CONSUMER MAY SEEK A REMEDY UNDER THE IMPLIED WARRANTY OF MERCHANTABILITY OR FITNESS FOR A PARTICULAR PURPOSE. CERTAINTEED'S OBLIGATIONS, RESPONSIBILITIES, AND/OR LIABILITY SHALL BE LIMITED TO REPAIRING OR REPLACING

---

[1] Plaintiff did not attach a copy of the actual warranty to his Complaint and Defendant did not attach a copy of the warranty to its partial Motion to Dismiss. It is not clear if the following warranty language constitutes the entire warranty language.

> THE DEFECTIVE PRODUCT OR PROVIDING A REFUND PER THE TERMS OF THIS LIMITED WARRANTY. IN NO EVENT SHALL CERTAINTEED BE LIABLE FOR ANY INCIDENTAL OR CONSEQUENTIAL DAMAGES, INCLUDING ANY DAMAGE TO THE BUILDING, ITS CONTENTS, OR ANY PERSONS OR PROPERTY, THAT OCCUR AS A RESULT OF A BREACH. IF YOUR STATE DOES NOT ALLOW EXCLUSIONS OR LIMITATIONS OF INCIDENTAL OR CONSEQUENTIAL DAMAGES, THE ABOVE LIMITATIONS MAY NOT APPLY TO YOU.
>
> **THIS WARRANTY APPLIES TO SYMPHONY SHINGLES INSTALLED DURING THE CALENDAR YEAR OF 2013.**

(*Id.* ¶¶ 17, 51-52).

In late 2018, approximately five years after Plaintiff purchased and Defendant installed the Shingles, some of the Shingles on the East-facing side of Plaintiff's home began discoloring and cracking down the middle, and water leaked into the home causing damage. (*Id.* ¶¶ 1, 20). Plaintiff contacted Defendant to request the immediate repair or replacement of those Shingles on the East-facing side of his home pursuant to the 50-year warranty. (*Id.* ¶ 20). At the end of 2018, Defendant's employee, David Hunt, visited Plaintiff's home. (*Id.* ¶ 21). Mr. Hunt used a drone to take video of the entire roof, and the video showed that many of the Shingles on the roof were cracking down the middle. (*Id.* ¶ 22). Mr. Hunt informed Plaintiff that the Shingles were defective, that he would issue a report back to Defendant, and that Defendant would begin replacing the defective Shingles soon. (*Id.* ¶ 23). Mr. Hunt assigned Claim Number CR0818420 to Plaintiff's warranty claim. *Id.*

On February 22, 2019, Defendant sent Plaintiff a letter stating that: "The Symphony warranty offers shingle replacement and a cost of labor. Unfortunately we do not manufacture the Symphony shingle any longer." (*Id.* ¶ 24).

3

Plaintiff subsequently notified Defendant, on multiple occasions, that any warranty repair or replacement work would need to be completed before October 2019, as Ohio weather generally does not permit for the opening of a roof during winter and to limit any additional water damage to his home. (*Id.* ¶ 30). Regarding repairing the Shingles, Defendant did not, and has not, offered to repair the Shingles. (*Id.* ¶ 26). With respect to replacing the Shingles, Defendant offered to replace the Shingles with asphalt shingles, as it no longer produces lightweight, synthetic slate shingles of any kind. (*Id.* ¶¶ 26-27). However, the structural integrity of Plaintiff's home cannot accommodate asphalt shingles due to the architectural modifications made to Plaintiff's roof based on the Shingles' design. (*Id.* ¶¶ 28-29).

Plaintiff found a composite, lightweight slate shingle from another company, DaVinci Roofscape, ("DaVinci shingles") that Plaintiff believes is suitable replacement for the Shingles, and found an installation company qualified to install the DaVinci shingles. (*Id.* ¶¶ 29, 31). The DaVinci shingles' material costs estimate is approximately $168,287.99, the installation bid is approximately $461,560.54, and the removal and replacement cost associated with any and all copper flashing, edging, etc. is approximately $110,000.00. (*Id.* ¶¶ 32-34). Plaintiff submitted the above cost breakdown regarding the Shingles' replacement to Defendant on multiple occasions, including September 6, 2019. (*Id.* ¶ 35).

Plaintiff's primarily contact with Defendant regarding his warranty claim has been with Defendant's representative, Bill Hammerstone. (*Id.* ¶ 38). In September 2019,[2] and after nearly eight months of receiving no meaningful responses from Mr. Hammerstone,

---

[2] The Complaint states that Plaintiff made this call in September 2018, but the Court believes that Plaintiff made a typographical error in light of the other dates in the Complaint.

Plaintiff again called Mr. Hammerstone to inquire about the status of the warranty claim. (*Id.* ¶ 39). Mr. Hammerstone's supervisor, "Mr. Bill"—a person who Plaintiff doubts really exists—answered the phone and informed Plaintiff that his claims file was empty. (*Id.* ¶ 39). Plaintiff then called Mr. Hunt, who indicated that he knew that Defendant's executive team knew of Plaintiff's warranty claim because Mr. Hunt saw a blow-up picture of Plaintiff's home at an executive team meeting earlier that year. (*Id.* ¶ 40).

On October 17, 2019, Defendant sent Plaintiff an email, from the email address titled noreply@salesforce.com, and included the warranty claim number that Mr. Hunt assigned, but did not include an individual point of contact. (*Id.* ¶ 41). The email contained a document titled "RELEASE – INDIVIDUAL" and offered to pay Plaintiff an unknown amount as complete satisfaction for the repair or replacement value under the warranty. (*Id.* ¶ 42). Neither Defendant's unsigned e-mail nor the attached document explain Defendant's reasoning behind the October 17, 2019 offer. (*Id.* ¶ 43).

On February 14, 2020—6 years, 6 months, and 2 weeks after Plaintiff purchased and Defendant installed the Shingles—Plaintiff filed the Complaint in this matter and brings four counts against Defendant: breach of the Ohio Consumer Sales Practices Act, breach of express warranty pursuant to the Magnuson Moss Warranty Act, breach of express warranty pursuant to Ohio law, and fraud pursuant to Ohio law. (Doc. 1).

On March 12, 2020, Defendant filed two documents with the Court. The first is a Notice of Offer to Cure Pursuant to Ohio Revised Code § 1345.092, part of the Ohio Consumer Sales Practice Act, in which CertainTeed Corporation, Defendant's successor, notified the Court that Defendant served an Offer to Cure upon Plaintiff's counsel in the total amount of $303,400.00 to satisfy Plaintiff's count under the Ohio Consumer Sales

Practice Act. (Docs. 4, 4-1). The second is Defendant's Offer of Judgment under Federal Rule of Civil Procedure ("Rule") 68 in which Defendant offers to allow judgment to be entered against it, in the total amount of $390,400.00, contingent on Plaintiff's dismissal, with prejudice, of all counts against it. (Doc. 5). Plaintiff did not accept either offer.

Defendant now moves, pursuant to Rule 12(b)(6), to partially dismiss the Complaint. (Doc. 8). In particular, it moves for dismissal of Plaintiff's count one for breach of the Ohio Consumer Sales Practices Act and counts two and three for breaches of express warranty, as it argues that those counts are time-barred under the applicable statutes of limitations. *Id.*

## II. ANALYSIS

In deciding a Rule 12(b)(6) motion to dismiss, this Court must "construe the complaint in the light most favorable to the plaintiff, accept [the plaintiff's] allegations as true, and draw all reasonable inferences in favor of the plaintiff." *Bassett v. Nat'l Collegiate Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008) (quoting *Directv, Inc. v. Treesh*, 487 F.3d 471, 476 (6th Cir. 2007)).

To avoid dismissal under Rule 12(b)(6), a plaintiff's complaint must contain "(1) 'enough facts to state a claim to relief that is plausible,' (2) more than 'a formulaic recitation of a cause of action's elements,' and (3) allegations that suggest a 'right to relief above a speculative level.'" *Tackett v. M&G Polymers, USA, LLC*, 561 F.3d 478, 488 (6th Cir. 2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009). "Dismissal under [Rule] 12(b)(6) based on a statute-

6

of-limitations bar is appropriate when the complaint shows conclusively on its face that the action is indeed time-barred." *Allen v. Andersen Windows, Inc.*, 913 F. Supp. 2d 490, 500 (S.D. Ohio 2012).

### a. Counts Two and Three: Breach of Express Warranty

#### i. Statute of Limitations

The Court will begin its analysis with Defendants arguments regarding Plaintiff's counts two and three. Congress created the Magnuson-Moss Warranty Act ("MMWA"), 15 U.S.C. §§ 2301 *et seq.*, to protect consumers from merchants' misuse of express warranties. *Hahn v. Jennings*, 2004-Ohio-4789, ¶ 22 (Ohio App. 10th Dist. Sept. 9, 2004). The law's basic premise is that merchants do not have to provide warranties, but, if they do, the warranties must comply with the MMWA. *Id.* The law imposes certain requirements on merchants who provide warranties, including written disclosure of particular information, requiring that warranties be identified as either full or limited, and requiring warrantors to remedy defective products within a reasonable time and without charge. *Kuns v. Ford Motor Co.*, 543 F. App'x 572, 575 (6th Cir. 2013).

The MMWA creates a federal cause of action for violations of the MMWA itself and for breaches of warranty arising from state law. *Id.*; *see Albright v. Sherwin-Williams Co.*, No. 1:17 CV 2513, 2019 WL 5307068, at *10 (N.D. Ohio Jan. 29, 2019) (The MMWA "is a vehicle to assert state law breach of warranty claims in federal court."); *cf. Powell v. Airstream, Inc.*, 140 N.E.3d 1172, 1187 (2019) ("The outcome of the state law warranty claims determines the disposition of the Magnuson-Moss Act claims.") (applying Washington state law). "Therefore, the elements that a plaintiff must establish to pursue a cause of action for breach of warranty under the MMWA are the same as those required

by Ohio law." *Kuns*, 543 F. App'x at 575. Relevant here, the MMWA "prescribes no statute of limitations; instead, the relevant statute of limitations for the pertinent state is to be applied." *Hahn*, 2004-Ohio-4789, ¶ 24.

The Uniform Commercial Code ("U.C.C."), as codified in Ohio, provides a four-year statute of limitations to claims for breach of a contract for a sale of goods. Ohio Rev. Code § 1302.98(A) ("An action for breach of any contract for sale must be commenced within four years after the cause of action has accrued."). "A cause of action accrues when the breach occurs." Ohio Rev. Code. § 1302.98(B). A breach of warranty generally occurs, and thus the statute of limitations generally begins to run, when tender of delivery of the goods is made. *Id.* An exception exists *if* the warranty at issue explicitly extends to future performance of the goods *and* discovery of the breach must necessarily await such future performance and *then* the cause of action accrues, and the statute of limitations begins to run, when the breach is or should have been discovered. *Id.* This exception, known as the "discovery rule," is limited. *See Allen*, 913 F. Supp. 2d at 503 (citing *Voth v. Chrysler Motor Corp.*, 545 P.2d 371, 376 (Kan. 1976) (analyzing identical language in Kansas' codification of the U.C.C.)).

The Complaint alleges that Defendant breached its express warranty when it failed to repair or replace the defective Shingles. (Doc. 1); (Doc. 12 PageID 99) ("Plaintiff's warranty claims are based on allegations that Defendant did not 'repair or replace' the Shingles as required by the 50-Year Warranty."). A claim for breach of express warranty based on a defendant's failure to repair or replace does not accrue upon delivery, and the seller's promise to repair or replace is an independent obligation that is not breached until the seller fails to repair or replace. *Allen*, 913 F. Supp. 2d at 504. The four-year statute of

8

limitations on Plaintiff's express warranty claims based on Defendant's repair or replace obligation did not begin to run until Defendant failed to abide by its obligation to repair or replace the Shingles. *See id.* The Complaint alleges that Plaintiff first noticed the defective Shingles in late 2018 and Defendant failed to repair and replace those Shingles on multiple occasions during 2019. (Doc. 1). Construing the allegations in the Complaint in the light most favorable to Plaintiff, and as he filed the Complaint in February 2020, his claims that Defendant breached the express warranty by failing to comply with its repair or replace obligations are not time-barred. *See id.* Dismissal of such claims is not proper.

Defendant argues that the Complaint also alleges that Defendant breached its express warranty by providing defective Shingles and/or by failing to deliver a non-defective product. (Doc. 8 PageID 49, 55). Plaintiff responds, somewhat confusingly, both that his "claims for breach of express warranty *generally* do not rely on allegations that Defendant breached the 50-Year Warranty by supplying defective goods" and that he "alleges that Defendant is liable for breach of express warranty because it refused to repair or replace the Shingles in accordance with its obligations under the 50-Year Warranty." (Doc. 12 PageID 97) (emphasis added). The Court reads Plaintiff's response to mean that the Complaint alleges that Defendant also breached its express warranty by providing defective Shingles. *See id.*

Typically, a promise to repair or replace defects for a specified time period is a remedy[3] for the buyer and is not a promise of future performance within the meaning of

---

[3] Ohio permits a seller to limit a buyer's available remedies for a breach of warranty, as long as those limitations are not unconscionable and do not cause the warranty to fail of its essential purpose. *See Siriano v. Goodman Mfg.* Co., No. 2:14-CV-1131, 2015 WL 12748033, at *9 (S.D. Ohio Aug. 18, 2015); *see, e.g.*, Ohio Rev. Code § 1302.92(D) (permitting the seller to exclude the recovery of consequential damages); Ohio Rev. Code § 1302.93(A)(1) (permitting the seller to limit the buyer's remedies to repair or replacement of the defective product).

9

Ohio Revised Code § 1302.98(B). *Allen*, 913 F. Supp. 2d at 501-03; *see Zaremba*, 458 F. Supp. 2d at 551; *Allis-Chalmers Credit Corp. v. Herbolt*, 479 N.E.2d 293, 301 (Ohio App. 10th Dist. May 31, 1984). However, "[j]ust because a repair-or-replace clause does not satisfy the 'future performance' exception does not mean that another clause in the warranty cannot." *Siriano*, 2015 WL 12748033, at *6 ("Simply stated, repair-or-replace limitations and future performance warranties are not mutually exclusive"); *accord Controlled Environments Const., Inc. v. Key Indus. Refrigeration Co.*, 266 Neb. 927, 935 (2003) ("Although the [ ] warranty contains repair or replace language, the mere existence of such language does not necessarily lead to the conclusion that the warranty does not extend to future performance.").

The discovery rule exception turns on the precise warranty language at issue and, here, unlike in *Allen*, neither party attached a copy of the warranty to their pleadings and it is not clear if the warranty language in the Complaint is the full warranty language. *See Grover v. BMW of N. Am., LLC*, 434 F. Supp. 3d 617, 632 (N.D. Ohio 2020); *Siriano*, 2015 WL 12748033, at *6. To the extent that the Complaint alleges that Defendant breached the express warranty at issue by providing defective Shingles, the Court holds that the Complaint does not conclusively show that this action is time-barred and declines, at this stage in litigation, to determine when such claims accrued or whether the discovery rule exception applies. *See Grover*, 434 F. Supp. 3d at 632; *Siriano*, 2015 WL 12748033, at *6; *see also Allen*, 913 F. Supp. 2d at 500. Dismissal of such claims is not warranted at this time.

Plaintiff states that the Complaint also alleges that Defendant's "repair or replace warranty failed of its essential purpose and/or was unconscionable," and Defendant did

not address these allegations in its partial Motion to Dismiss. (Doc. 12 PageID 100 n.3) (citing (Doc. 1 ¶¶ 47-59)). The Court agrees and will not address those allegations further.

### ii. Not Duplicative

Defendant argues that the Court must dismiss of count two, brought under the MMWA, because it is impermissibly duplicative of count three, brought under Ohio state law. (Doc. 8 PageID 55-56); (Doc. 14 PageID 128-29). As noted, the MMWA "is a vehicle to assert state law breach of warranty claims in federal court." *Albright*, 2019 WL 5307068, at *10; *see* 15 U.S.C. § 2310(d)(1). "The MMWA is a somewhat unique federal statute in that merely alleging a violation of the act is insufficient to confer federal question jurisdiction; a separate $50,000 amount in controversy requirement must also be satisfied." *Schultz v. Gen. R.V. Ctr.*, 512 F.3d 754, 757 (6th Cir. 2008) (citing 15 U.S.C. § 2310(d)(3)(B)). Also, if the action is brought as a class action, the number of named plaintiffs must be at least 100. 15 U.S.C. § 2310(d)(3)(C).

Defendant does not challenge the Complaint's allegation that the amount in controversy exceeds $75,000.00 and Plaintiff does not bring this claim as a class action. If Plaintiff were to ultimately recover damages under his Ohio state law claim of breach of warranty, his recovery of damages under the MMWA would be the same, but not duplicative, with the additional remedy of an award of reasonable costs and attorneys' fees. *See Meta v. Target Corp.*, No. 1:14 CV 832, 2016 WL 11634651, at *10 (N.D. Ohio Sept. 12, 2016) ("The MMWA creates additional damages for warranty violations, and provides for the recovery of attorney fees."); *see also* 15 U.S.C. § 2310(d)(1), (2); *accord Farley v. Country Coach, Inc.*, No. 05-CV-71623, 2006 WL 3299464, at *6 (E.D. Mich. Nov. 14, 2006), *aff'd*, 403 F. App'x 973 (6th Cir. 2010); *Chambers v. Gen. Trailer Mfg.*,

11

No. 04-71066, 2006 WL 1851008, at *5 (E.D. Mich. July 5, 2006). The Court finds that Plaintiff's MMWA claim derives from, but is not duplicative of, his Ohio claim. Dismissal is not warranted.

### b. Count One: Breach of Ohio Consumer Sales Practices Act

The Ohio Consumer Sales Practices Act ("OCSPA"), Ohio Rev. Code. §§ 1345.01, *et seq.*, "prohibits unfair or deceptive acts and unconscionable acts or practices by suppliers in consumer transactions whether they occur before, during, or after the transaction." *Anderson v. Barclay's Capital Real Estate, Inc.*, 989 N.E.2d 997, 999 (2013) (citing Ohio Rev. Code §§ 1345.02(A) and 1345.03(A)). Claims under the OCSPA are subject to a two-year statute of limitations. Ohio Rev. Code § 1345.10(C) ("An action under sections 1345.01 to 1345.13 of the Revised Code may not be brought more than two years after the occurrence of the violation which is the subject of suit."). The discovery rule applies only to OCSPA claims seeking rescission as a remedy; otherwise, there is no discovery rule applicable to OCSPA claims. *Allen*, 913 F. Supp. 2d at 506.

"Ohio courts have held that a manufacturer's failure to repair a defect covered by a warranty can amount to a violation of the [O]CSPA." *Temple v. Fleetwood Enterprises, Inc.*, 133 F. App'x 254, 266 (6th Cir. 2005) (citing *Boyle v. Daimler Chrysler Corp.*, 2002-Ohio-4199, ¶ 74 (Ohio App. 2nd Dist. Aug. 16, 2002)); *see Risner v. Regal Marine Indus., Inc.*, 8 F. Supp. 3d 959, 997 (S.D. Ohio 2014) ("Ohio courts have specifically held that a manufacturer's failure to repair a defect covered by a warranty can constitute a violation of the [O]CSPA."); *Conrad v. Winnebago Indus., Inc.*, No. 2:06-CV-953, 2008 WL 1696950, at *5 (S.D. Ohio Apr. 9, 2008) ("Where a claim under the O[CSPA] is based on

12

a representation to repair or replace defects, a plaintiff must prove that the defendant failed to repair a covered defect.").

The parties disagree when the alleged violation of the OCSPA occurred: when Defendant installed the Shingles or when Defendant failed to repair or replace the Shingles. Defendant contends that Plaintiff's OCSPA claims arise out of the defective Shingles; the two-year statute of limitations began running on July 31, 2013 when Plaintiff purchased, and Defendant installed the Shingles; application of the discovery rule is not available; and Plaintiff's OSCPA claims are time-barred. (Doc. 8 PageID 46-49); (Doc. 14 PageID 126-28). Plaintiff responds that his OCSPA claims arise out of Defendant's refusal to the repair or replace the Shingles—not out of the defective Shingles themselves; the two-year statute of limitations began running in 2019 when Defendant refused to repair or replace the Shingles; application of the discovery rule is not necessary; and his OSCPA claims are timely. (Doc. 12 PageID 100-03).

The Complaint alleges "that Defendant committed unfair, deceptive, and/or unconscionable acts in violation of the OCSPA *when it refused to repair or replace the Shingles* as required by the 50-Year Warranty, instead delaying Plaintiff's warranty claim and bouncing him around different sales representatives." (Doc. 12 PageID 102) (citing (Doc. 1 ¶¶ 64-70, 73-74) (emphasis added)). A review of the Complaint reveals that Plaintiff's claims under the OCSPA are based on Defendant's failure to repair or replace the Shingles, and are not based on the standard, quality, or grade of the Shingles themselves. (Doc. 1 ¶¶ 64-70, 73-74). Accordingly, "the occurrence of the violation" is, and the two-year statute of limitations began to run under Ohio Revised Code § 1345.10(C), when Defendant failed to repair or replace the Shingles. Construing the

allegations in the Complaint in the light most favorable to Plaintiff, the Complaint alleges that Defendant failed to repair and replace the Shingles on multiple occasions during 2019. (Doc. 1). As Plaintiff filed the Complaint in February 2020, his claims that Defendant violated the OCSPA when it refused to repair or replace the Shingles are not time-barred, and dismissal of such claims is not warranted.

III. **CONCLUSION**

For the foregoing reasons, it is hereby **ORDERED** that Defendant's partial Motion to Dismiss (Doc. 8) is **DENIED**.

**IT IS SO ORDERED.**  _/s Michael R. Barrett_____
Michael R. Barrett, Judge
United States District Court